UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IAN BROWN,

        Plaintiff,

v.                                             Case No:   6:16-cv-898-Orl-40GJK

SEADOG BREWPUB BV, LLC, and
FRED HAYMAN,

        Defendants.
_____

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION FOR APPROVAL OF PARTIES' SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE (Doc. No. 38)** |
| **FILED:** | **November 11, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

**I.**     **BACKGROUND.**

On May 24, 2016, Plaintiff Ian Brown filed a collective action complaint against Defendants, alleging that it violated the overtime and minimum wage provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a). Doc. No. 1. Subsequently, Jason Falzer, Kelly Carlin, Todd Schindler, and Laura Sledge joined the litigation as party plaintiffs. Doc. Nos. 9, 26, 28, 31. On November 11, 2016, the parties filed a Joint Motion for Approval of Parties' Settlement Agreement and Dismissal with Prejudice (the "Motion") requesting that the Court approve their settlement agreement (the "Agreement") and dismiss the case with prejudice.

Doc. No. 38. This matter has been referred to the undersigned for a report and recommendation. Doc. No. 7. For the reasons that follow, it is recommended that the Motion be granted in part and denied in part.

**II.     LAW.**

In <u>Lynn's Food Stores, Inc. v. United States Department of Labor</u>, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. <u>Id.</u>; see also <u>Sammons v. Sonic-North Cadillac, Inc.</u>, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of FLSA claim in arbitration proceeding is not enforceable under <u>Lynn's Food</u> because it lacked Court approval or supervision by the Secretary of Labor). Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. <u>Lynn's Food Store</u>, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. <u>Id.</u> at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the

following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

Leverso v. SouthTrust Bank of Ala., Nat'l Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. See Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (citing Skidmore v. John J. Casale, Inc., 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net[.]")). In Silva, the Eleventh Circuit stated:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. See Lynn's Food, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> scrutiny runs counter to FLSA's provisions for compensating the wronged employee. See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); see also Zegers v. Countrywide Mortg. Ventures, LLC, 569 F. Supp. 2d 1259 (M.D. Fla. 2008).

Id. at 351-52.[2] For the Court to determine whether the proposed settlement is reasonable, counsel for the claimant must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his counsel, or otherwise. Id. When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[3] Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[4] It is the Court's responsibility to ensure that any such allocation is reasonable. See Silva, 307 F. App'x at 351-52. As the Court interprets Lynn's Food and Silva, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternate means of demonstrating the reasonableness of attorney's fees and costs was set forth in Bonetti v. Embarq Mgmt. Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009). In Bonetti, the

---

[2] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[3] From a purely economic standpoint, defendants are largely indifferent as to how their settlement proceeds are divided as between plaintiffs and their counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[4] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) <u>represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.</u>

Id. at 1228 (emphasis added). Judge Presnell maintained that if the matter of attorney's fees is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." Id. The undersigned finds this reasoning persuasive.

### III. ANALYSIS.

#### A. Settlement Amount.

This case involves disputed issues of FLSA liability, which constitutes a bona fide dispute. Doc. No. 38 at ¶¶ 1-3. The parties are represented by independent counsel. Id. at ¶ 5. Under the Agreement, Plaintiffs are receiving the following amounts:

| Plaintiff | unpaid wages | liquidated damages |
|---|---|---|
| Ian Brown | $8,575.00 | $8,575.00 |
| Jason Falzer | $5,725.00 | $5,725.00 |
| Kelly Carlin | $2,925.00 | $2,925.00 |
| Todd Schindler | $4,375.00 | $4,375.00 |
| Laura Sledge | $3,400.00 | $3,400.00 |

Doc. No. 38-1 at 2-4.[5] Plaintiffs represent that they are receiving "all alleged actual damages along with a substantial portion, if not all, of possible liquidated damages." Doc. No. 38 at 7. The parties represent that "to avoid the uncertainties of litigation and the attorneys' fees associated with this type of action, the Parties have resolved the action in its entirety . . . ." Doc. No. 38 at ¶ 5. The parties represent that "the current financial health of the company and restaurant itself impacts the possibility of protracted litigation" and "[t]he amount of damages ultimately recoverable by Plaintiffs (exclusive of attorney's fees and costs) is uncertain, but is believed to be roughly the amount Plaintiffs will receive in this settlement." Id. at 6. After reviewing the Motion and Agreement, it is **RECOMMENDED** that the Court find the amount of Plaintiffs' settlement to be fair and reasonable.

### B. Attorney's fees and Costs.

Under the Agreement, Plaintiff's counsel will receive $31,000.00 in attorney's fees and costs. Doc. No. 28-1 at 2, 4. The parties represent that attorney's fees and costs were negotiated separately from Plaintiff's recovery. Doc. No. 38 at 8. The settlement is reasonable on its face, and the parties' representation adequately establishes that the issue of attorney's fees and costs was agreed upon separately and without regard to the amount paid to Plaintiff. See Bonetti, 715 F. Supp. 2d at 1228. Accordingly, pursuant to Bonetti, it is **RECOMMENDED** that the Court find the Agreement to be a fair and reasonable settlement of Plaintiffs' FLSA claims.

### C. General Release, Confidentiality Provision, and No Future Employment Clause.

The Agreement contains general releases from Plaintiffs to Defendants as well as a general release from Defendants to Plaintiffs. Doc. No. 38-1 at ¶ 3. In Plaintiffs' general release, they agree to release Defendants from any and all past, present or future claims they may have against

---

[5] Plaintiffs' total recovery is $50,000. Doc. No. 38-1 at 2-4.

Defendants. Id. Although the Eleventh Circuit has not addressed the effect of a general release on the fairness and reasonableness of an FLSA settlement, a number of courts in this District have questioned the propriety of such a release in FLSA settlements. E.g., Bright v. Mental Health Res. Ctr., Inc., Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (citing Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010)). This is true even where there has been full compensation. See, e.g., Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1240 (M.D. Fla. 2010) ("[I]f the parties' proposed 'full compensation' agreement includes an additional term – such as the forbearance of a valuable right of the employee, including perhaps one of the employee's FLSA rights, or the exchange of another valuable consideration of any kind – the notion of 'full compensation' becomes illusory and inapplicable."). The Honorable Steven D. Merryday explained:

> An employee seeking to vindicate his FLSA rights often desperately needs his wages, and both the employee and the employer want promptly to resolve the matter. In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case. However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release – that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.

Moreno, 729 F. Supp. 2d at 1351-52. In light of these concerns, the unexplained inclusion of a general release, be it unilateral or mutual, in a FLSA settlement often results in a finding that the settlement is not a fair and reasonable resolution of plaintiff's FLSA claims. E.g., Bright, 2012 WL 868804, at *4; Shearer v. Estep Const., Inc., Case No. 6:14-cv-1658-Orl-41GJK, 2015 WL 2402450, at *4 (M.D. Fla. May 20, 2015). That is not to say a general release may never be

included in a FLSA settlement. Courts in this District have approved FLSA settlements with general releases where the parties provide the Court with sufficient information, such as detailed explanations in their motions or affidavits from plaintiffs, regarding any other claims that the employees are knowingly releasing, including the fair value of such claims, whether those claims are being compromised and, if so, the reasons for such compromise and the consideration given in exchange for the general release. See, e.g., Middleton v. Sonic Brands L.L.C., Case No. 6:13-cv-386-Orl-28KRS, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (approving a settlement agreement providing $100.00 as separate consideration for a general release); Bright, 2012 WL 868804, at *5 (approving the settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her). The parties have provided no such explanation. Instead, they simply assert that the "mutual general release is important to all parties to 'ensure that there will not be future litigation on events arising prior to approval,' and further Defendants have agreed to provide a neutral letter of reference to each of the Plaintiffs." Doc. No. 38 at 9 (quoting Barnes v. Lane Valente Indus., No: 2:16-cv-174-FtM-99CM, 2016 WL 6122464, at *3 (M.D. Fla. Oct. 13, 2016)). Nowhere does it say that the neutral letters of reference are given in consideration for the general release. Therefore, the Court cannot make an informed determination as to whether the Plaintiffs' general release affects the fairness and reasonableness of the settlement. Moreover, there is no indication that the Agreement contains separate consideration for the Plaintiffs' general release.

The Agreement also contains a confidentiality clause. Doc. No. 38-1 at ¶ 8. The confidentiality clause precludes Plaintiffs from discussing the terms of the Agreement with anyone other than as "required by court order, administrative agency, the Internal Revenue Service, or to auditors, financial planners, or accountants, for related purposes only, or as otherwise required by

law." Id.

Courts within this circuit routinely reject such confidentiality clauses contained in FLSA settlement agreements because they "thwart Congress's intent to ensure widespread compliance with the FLSA." Pariente v. CLC Resorts and Devs., Inc., No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014) (internal quotations omitted and citing authorities). Additionally, such provisions have been rejected because they are inherently unenforceable due to the public filing of the settlement agreements containing the confidentiality clauses. See Housen v. Econosweep & Maint. Servs., Inc., No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. Jun. 6, 2013) (confidentiality clauses are unenforceable when the settlement agreement is filed on the public docket and citing authority).

While such provisions have been approved when the plaintiff receives separate consideration, in this case there is no such consideration and the undersigned finds that the confidentiality clause would unduly thwart Congress's intent to ensure widespread compliance with the FLSA. See Smith v. Aramark Corp., Case No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *3-4 (M.D. Fla. Nov. 4, 2014) (approving FLSA settlement providing separate consideration for a confidentiality and non-disparagement clause); Caamal v. Shelter Mortg. Co., Case No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (approving FLSA settlement providing $500.00 as separate consideration for a general release, non-disparagement clause, and waiver of future employment with defendant).

Nevertheless, even though the Plaintiffs' general release and confidentiality provisions are unenforceable, they do not preclude approval of the Agreement in this case. The Agreement contains a severability clause, providing:

> If any provision of this Agreement or any portion of any provision of this Agreement is determined to be null and void or unenforceable

>by any court . . . having jurisdiction, then such provision or portion of the provision shall be considered separate and apart from the remainder of this Agreement and this Agreement shall otherwise remain in full force and effect.

Doc. No. 38-1 at 6. Thus, terms in the Agreement may be severed without affecting the enforceability of the balance of the Agreement. Pursuant to the severability clause, the Court may strike the Plaintiffs' general release (Doc. No. 38-1 at ¶ 3), and the confidentiality provision (Doc. No. 38-1 at ¶ 8), from the Agreement without impacting the enforceability of the remainder of the Agreement.  See Pariente, No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5-6 (striking confidentiality clause pursuant to severability clause). Accordingly, it is **RECOMMENDED** that the Court strike the above-cited provisions of the Agreement as invalid and unenforceable.[6]

Finally, the Agreement contains a no future employment clause, in which Plaintiffs agree that "they shall not apply in the future for employment with Defendants." Doc. No. 38-1 at 5. The undersigned finds that no future employment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants. There is no indication that the clause undermines the fairness of the Agreement. Additionally, the Motion indicates that the financial health of Defendants may not be strong. See Doc. No. 38 at 6 ("the current health of the company and restaurant itself impacts the possibility of protracted litigation."). The undersigned finds that the no future employment clause does not preclude approval of the Agreement. See generally Robertson v. Ther-RX Corp., No. 2:09cv1010–MHT (WO), 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011) (finding no future employment clause in FLSA settlement agreement inconsequential where plaintiffs did not want to work for defendants again and "because the future

---

[6] To be clear, the undersigned is not recommending that the Court strike the Defendants' general release. Doc. No. 38-1 at 4.

financial viability of this corporation is quite precarious, future employment is far from assured for anyone.").

## IV. CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Court enter an order **GRANTING in part and DENYING in part** the Motion (Doc. No. 38) as follows:

1. The Court should **STRIKE** the Plaintiffs' general release (Doc. No. 38-1 at ¶ 3), and the confidentiality provision (Doc. No. 38-1 at ¶ 8) from the Agreement;

2. The Motion (Doc. No. 38) should be **GRANTED** to the extent that the Court finds the Agreement (Doc. No. 38-1), with the modifications set forth above, to be a fair and reasonable compromise of Plaintiff's FLSA claims;

3. The Motion should be otherwise **DENIED**; and

4. The Court should **DISMISS the case with prejudice**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection in order to expedite the final disposition of this case.**

Recommended in Orlando, Florida on December 29, 2016.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy